NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

Nos. 18-2137 & 18-2138
_____

UNITED STATES OF AMERICA,
                                        Appellant

v.

CAROLYN JACKSON


UNITED STATES OF AMERICA,

                                        Appellant
                    v.

JOHN E. JACKSON
_____

Appeal from the United States District Court
for the District of New Jersey
(D.C. Criminal Action Nos. 2-13-cr-00290-001 and 2-13-cr-00290-002)
District Judge: Honorable Katharine S. Hayden
_____

Submitted under Third Circuit LAR 34.1(a)
on March 15, 2019

Before: MCKEE, ROTH and FUENTES, Circuit Judges


(Opinion filed: June 26, 2020)

―――――――――

OPINION[*]

―――――――――

ROTH, Circuit Judge

The government appeals the District Court's amended judgments of sentence against John and Carolyn Jackson. The government argues that the District Court erred in three ways: (1) failing to apply the aggravated assault sentencing guideline to multiple counts of conviction, (2) failing to apply several sentencing enhancements, and (3) imposing substantively unreasonable sentences. We write only for the parties and assume their familiarity with the history of this case, which includes a prior government appeal and a remand for re-sentencing. For the following reasons, we will again vacate the amended sentences imposed by the District Court and remand for re-sentencing.

I[1]

In our prior opinion remanding this case to the District Court, we directed the District Court to "make the requisite findings of fact (under a preponderance of the evidence standard) in order to calculate [a Guidelines] range (which includes deciding whether the aggravated assault guideline applies . . .)."[2]

―――――――――

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

[1] The District Court had subject matter jurisdiction under 18 U.S.C. § 3231, and we have jurisdiction under 18 U.S.C. § 3742(b). We "review factual findings relevant to the Guidelines for clear error and . . . exercise plenary review over a district court's interpretation of the Guidelines." *United States v. Grier*, 475 F.3d 556, 570 (3d Cir. 2007).

[2] *United States v. Jackson*, 862 F.3d 365, 390-91 (3d Cir. 2017).

The Jacksons claim that the aggravated assault guideline does not apply because the government cannot identify particular assaults (aside from Count 10) that satisfy the requirements of the aggravated assault cross-reference. The District Court appeared to rely on this argument when it declined to apply the aggravated assault cross-reference to Counts 1, 3, 5, 6, 9, and 12 of the indictment. However, as described below, this argument runs contrary to the language of the Sentencing Guidelines as well as to the precedent of this Court.

The assault guideline—which we held in our prior opinion applies to the Jacksons' convictions—includes a cross reference to the aggravated assault guideline.[3] Aggravated assault is defined, in relevant part, as any "felonious assault that involved . . . serious bodily injury."[4] "Serious bodily injury," in turn, is defined as an "injury involving extreme physical pain or the protracted impairment of a function of a bodily member, organ, or mental faculty; or requiring medical intervention such as surgery, hospitalization, or physical rehabilitation."[5]

The District Court credited the testimony of Defendants' experts and found that the Jacksons did not cause each of the serious injuries suffered by the Jacksons' three adopted children (Joshua, "J," and "C"). This ruling turned the preponderance of the evidence standard on its head. The children suffered at least ten unusual and serious injuries while in the Jacksons' custody. For example, Joshua suffered, among other

---

[3] *See* U.S.S.G. § 2A2.3(c)(1) (Assault Guideline) ("If the conduct constituted aggravated assault, apply § 2A2.2 (Aggravated Assault).").
[4] *Id.* § 2A2.2 n.1.
[5] *Id.* §1B1.1 n.1.

things: a fractured bile duct, a brain injury, a fractured skull, a fractured humerus, a fractured spine, and a gangrenous finger. (**A3601.**) As another example, C suffered, among other injuries, a fractured humerus and two bouts of acute hypernatremia. (**A3802-03.**) These serious injuries—each of which involved the protracted impairment of a bodily function or required hospitalization—should not be viewed in isolation, but rather must be examined together with the jury findings that the Jacksons were both guilty, beyond a reasonable doubt, of:

- "physically assaulting Joshua . . . with various objects and with their hands," (Count 3)
- "physically assaulting [J] with various objects and with their hands," (Count 6)
- "physically assaulting [C] with various objects and with their hands," (Count 12)
- "withholding adequate water . . . and prohibiting [J] from drinking water," (Count 4)
- "withholding adequate water . . . and prohibiting [C] from drinking water," (Count 8)
- "withholding prompt and proper medical care for [C's] dehydration and elevated sodium levels," (Count 11)
- "withholding sufficient nourishment and food from [C]," (Count 7)
- "forcing [C] to ingest hot sauce and red pepper flakes," (Count 9), and
- "forcing [J] to ingest hot sauce, red pepper flakes, and raw onion" (Count 5).[6]

When applying the preponderance of the evidence standard in this context, courts consider whether it is "more likely than not" that the conduct constituting aggravated assault occurred.[7] Thus, the District Court should have analyzed, for example, whether it was more likely, on one hand, that the children suffered a variety of unusual physical

---

[6] A6054-61.
[7] *United States v. Haymond*, 139 S. Ct. 2369, 2374 (2019).

4

injuries as a result of the Jacksons' physical assaults; or more likely, on the other hand, that the children suffered a variety of unusual physical injuries that were not caused by the Jacksons (in spite of jury findings that the Jacksons repeatedly assaulted all three children in a variety of ways). Similarly, the District Court should have considered whether not just one, but both, of C's bouts of hypernatremia were more likely to have been caused by the Jacksons' withholding of adequate water (for which they were convicted) or more likely to have been caused by some other hypothetical, unproven occurrence cited by the Defendants' experts.[8]

On review, we have concluded that the government adequately proved that several of the children's serious injuries were in fact caused by the Jacksons. Thus, we are "left with the definite and firm conviction that a mistake [was] committed" when the District Court failed to apply the aggravated assault guideline to counts other than Count 10.[9]

II

---

[8] *See Jackson*, 862 F.3d at 397 (3d Cir. 2017) ("It defies common sense to believe that the jury found that Defendants physically assaulted their adopted children, withheld sufficient nourishment and water from them, and forced them to ingest hot sauce, red pepper flakes, and raw onion—but that such conduct did not cause the marks and bruises, the malnourishment, the hypernatremia, and the children's other injuries and medical issues.").

[9] *See United States v. Levinson*, 543 F.3d 190, 199 (3d Cir. 2008) (agreeing with the government that "the District Court rested its sentencing decision on an unsound factual foundation," quoting *Concrete Pipe & Prod. of California, Inc. v. Constr. Laborers Pension Tr. for S. California*, 508 U.S. 602, 622 (1993)).

The government also argues that the District Court erred by failing to apply sentencing enhancements to the Jacksons for: (1) abuse of a position of trust, (2) more than minimal planning, and (3) obstruction of justice.[10]

The Sentencing Guidelines provide for a two-level offense enhancement when a defendant abuses a position of public trust.[11] The government argues that the enhancement should apply to the Jacksons because they were entrusted to foster and to adopt the children by authorities in Oklahoma, Indiana, and New Jersey. This argument fails. The role of a parent (adoptive or otherwise) is not one of "public trust" because it is not "characterized by professional or managerial discretion."[12]

The Guidelines also provide for a two-level offense enhancement where an aggravated assault involved more than minimal planning.[13] "'[M]ore than minimal planning' means more planning than is typical for commission of the offense in a simple form. . . . [It] also exists if significant affirmative steps were taken to conceal the offense . . .."[14] The District Court did not clearly err by declining to apply this enhancement.

---

[10] The aggravated assault guideline also applies when a "felonious assault . . . involved . . . a dangerous weapon with intent to cause bodily injury (i.e., not merely to frighten) with that weapon." U.S.S.G. § 2A2.2 n.1. However, we are not convinced that the District Judge clearly erred in finding that the various objects used by the Jacksons should not be considered "dangerous weapons" for purposes of the aggravated assault enhancement.

[11] U.S.S.G. § 3B1.3. "Whether a defendant occupied a position of public or private trust for purposes of U.S.S.G. § 3B1.3 is a legal question over which we exercise plenary review." *United States v. Douglas*, 885 F.3d 124, 129 (3d Cir. 2018) (en banc) (citation omitted).

[12] U.S.S.G. § 3B1.3 n.1; *see Douglas*, 885 F.3d at 129.

[13] U.S.S.G. § 2A2.2. Whether a defendant engaged in more than minimal planning is a factual determination that is reviewed for clear error. *United States v. Cianscewski*, 894 F.2d 74, 82-83 (3d Cir. 1990).

[14] U.S.S.G. § 2A2.2 n.2.

Although the Jacksons appear to have taken affirmative steps to conceal their offenses, the District Court did not clearly err by finding them to be less than significant.

Finally, the Guidelines provide for a two-level offense enhancement for obstruction of justice.[15] For the enhancement to apply, a district judge must find both that (1) the "defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice with respect to the investigation, prosecution, or sentencing of the instant offense of conviction," and (2) "[t]he obstructive conduct related to . . . the defendant's offense of conviction and any relevant conduct."[16]

The government points to sworn testimony delivered by Carolyn Jackson in Family Court as the basis for applying this enhancement. Specifically, Carolyn testified in Family Court proceedings (during the criminal investigation) that she did not "know why [C's] sodium was so high," that she did not "give her excess sodium," that she did not "deprive her of fluids," or "salt poison her."[17] John Jackson testified similarly, stating that he "never g[ave] [C] excess sodium," "never withheld water from her" or "any of my children," "never withheld food from any of my children," "never g[ave] hot sauce to [C], and "always provided adequate medical care."[18] That testimony was "irreconcilably inconsistent with the jury's verdict" in the criminal case because the jury

---

[15] U.S.S.G. § 3C1.1. A district judge's findings with respect to the obstruction of justice enhancement are factual findings reviewed for clear error. *United States v. Miller*, 527 F.3d 54, 75 (3d Cir. 2008) (citing *Grier*, 475 F.3d at 561).
[16] U.S.S.G. § 3C1.1.
[17] A7110-11.
[18] A7255, A7286, A7311, A7329, A7344.

7

found both Defendants guilty of the conduct that the Jacksons denied under oath.[19]  The

District Judge found that the Defendants made these statements intentionally "in an effort

to claim back their children and to deny that they had committed acts of abuse and

neglect."[20]  Therefore, the Judge committed clear error by failing to impose the

obstruction of justice enhancement against the Jacksons.

## III

For the foregoing reasons, we will vacate the sentences imposed by the District

Court and remand for further proceedings consistent with this opinion.[21]

---

[19] *United States v. Johnson*, 302 F.3d 139, 154 (3d Cir. 2002) (A "defendant 'testifying under oath or affirmation' commits perjury if he 'gives false testimony concerning a material matter with the willful intent to provide false testimony, rather than as a result of confusion, mistake, or fault memory.'" (quoting *United States v. Dunnigan*, 507 U.S. 87, 94 (1993))); *see* U.S.S.G. § 3C1.1 n.4 ("The following is a . . . list of examples of the types of conduct to which this adjustment applies: . . . (B) committing, suborning, or attempting to suborn perjury, including during the course of a civil proceeding if such perjury pertains to conduct that forms the basis of the offense of conviction.").

[20] A8346.

[21] Having held that there was procedural error, we will take "the preferred course" and remand the case for re-sentencing without considering the substantive reasonableness of the sentences imposed.  *United States v. Merced*, 603 F.3d 203, 214 (3d Cir. 2010). However, we decline the government's request to reassign this matter to another judge. *See United States v. Kennedy*, 682 F.3d 244, 257-60 (3d Cir. 2012).